UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BOBBY CLAY | CIVIL ACTION

VERSUS | NO. 14-2508

ENSCO OFFSHORE COMPANY | SECTION "L" (3)

**ORDER & REASONS**

Before the Court are two motions for summary judgment: (1) Schlumberger Technology Corporation's (STC) Motion for Summary Judgment seeking contractual indemnity and defense against ENSCO Offshore Company (ENSCO) (R. Doc. 43); and (2) ENSCO's Cross-Motion for Summary Judgment denying any cross-claims by STC for indemnity (Rec. Doc. 45). Having heard the parties on oral argument and considered the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

I.  BACKGROUND

In August 2013, plaintiff Bobby Clay ("Plaintiff") was employed by ENSCO as a floorhand onboard the ENSCO 8506, a semi-submersible drilling vessel working off the coast of Louisiana. At the time, the ENSCO 8506 was operating under a Daywork Drilling Contract (the "Contract") between ENSCO, the contractor, and Anadarko Petroleum Company ("Anadarko"), the operator. The Contract contained a standard indemnity provision by which ENSCO would indemnify and hold harmless Anadarko and its indemnitees from claims arising from the Daywork Drilling Contract that are raised by ENSCO's employees. Section 905 states:

> Contractor [ENSCO] shall "be responsible for and hold harmless and indemnify" Operator indemnitees against Claims by or in favor of or incurred or sustained by Contractor's Personnel arising in connection with the Contract "regardless of fault".

Anadarko further entered into a separate Master Service Contract ("MSC") for drilling services with STC.  The MSC also contained an indemnity provision by which Anadarko agreed to indemnify and hold harmless STC and its indemnitees against claims for bodily injury brought by Anadarko's subcontractors and their employees and Anadarko's invitees.  Pursuant to the MSC, STC was hired by Anadarko to conduct wireline and plugging and abandoning services on the ENSCO 8506.  On August 6, 2015, Plaintiff, as part of the ENSCO drilling crew, was conducting plugging and abandoning services on the ENSCO 8506.  Plaintiff alleges that he was injured when a drill tool broke and struck him.

As a result of this incident, Plaintiff claims he has suffered and will continue to suffer loss of income, medical expenses, and severely painful and disabling injuries. Plaintiff seeks maintenance and cure from ENSCO.  Plaintiff invokes the Court's maritime jurisdiction pursuant to 28 U.S.C. §§1331 and 1333, the Jones Act, and general maritime law.  Plaintiff alleges that he was an employee of ENSCO while working aboard the vessel in the navigable waters of the United States when he suffered "severe and excruciating injuries which were proximately caused by the negligence of defendant." (R. Doc. 1).  Plaintiff ultimately filed an amended complaint asserting a claim of negligence against STC as the owner and provider of the drill tool that failed and injured the Plaintiff.  The parties jointly stipulated that, on the date of the incident, the Plaintiff was a seaman within the meaning of the Jones Act.

II.     **PRESENT MOTIONS**

STC seeks contractual indemnity and defense. (R. Doc. 43).  Section 905 of the Daywork Drilling Contract between ENSCO and Anardarko states that ENSCO shall hold harmless and indemnify Anadarko's indemnitees.  ENSCO does not contest whether STC is an indemnitee for the purposes of the Contract.  Rather, ENSCO argues that the provisions of the Contract which

require indemnity are unenforceable under Louisiana law. However, STC argues that the indemnity provisions are enforceable because the Contract is governed by maritime law (and not by Louisiana law). ENSCO's argument—that the Contract is governed by Louisiana law—hinges on the applicability of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* ("OCSLA"). When the OCSLA is applicable, federal law displaces general maritime law, and federal law will often adopt adjacent state law. In this case, the adjacent state law would be that of Louisiana, and the Louisiana Oilfield Indemnity Act, La. R.S. § 9:2780, *et seq.* ("LOIA"), clearly voids indemnity and defense provisions such as the one at issue. Thus, ENSCO vigorously argues for the applicability of the OCSLA. Therefore, the issue before the Court is what law—OCSLA or general maritime law—applies to the Daywork Drilling Contract.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir.2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant

cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little,* 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta,* 530 F.3d at 399.

## IV.　LAW AND ARGUMENT

The question presented by this case is what law governs the resolution of a contractual dispute, here the enforceability of an indemnity provision, when the act that caused the underlying injury which triggered the contractual indemnity claim occurred on a vessel in navigable water on the Outer Continental Shelf ("OCS"). Central to this issue is the application of OCSLA. When OCSLA is applicable, federal law displaces general maritime law, and often adopts adjacent state law. In this case, the adjacent state law would be that of Louisiana, and LOIA would void the indemnity and defense provisions at issue in the present case. For OCSLA to apply, the controversy must (1) arise on a situs governed by OCSLA (for example, the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) federal maritime must not apply on its own force, i.e., the contract must not be maritime in nature; and (3) the state law to be adopted under the OCSLA must not be contrary to existing federal law. *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043 (5th Cir. 1990).

a. **The Controversy Arose on a Situs Governed by OCSLA**

OCSLA was passed in 1953, to "amend the Submerged Lands Act in order that the area in the outer Continental Shelf beyond boundaries of the States may be leased and developed by the Federal Government." H.R.Rep. No. 83–413 (1953), reprinted in 1953 U.S.C.C.A.N. 2177, 2177. In 1953, OCSLA's purpose was "to define a body of law applicable to the seabed, the subsoil, and the fixed structures ... on the outer Continental Shelf." *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 355 (1969). Legislators debated whether to apply federal law and state law as surrogate federal law to the OCS or whether to allow general maritime law to apply to drilling structures on the OCS. *Id.* at 363. Ultimately, the Supreme Court determined that Congress intended that federal law and not general maritime law should apply to "fixed" structures. *Id.* at 364.

However, production in the industry increasingly favored the use of floating rather than "fixed" rigs, and technological advances continued to allow the rigs to drill in ever-deeper water. *United States v. Kaluza*, No. CRIM.A. 12-265, 2013 WL 6490341, at *4 (E.D. La. Dec. 10, 2013) *aff'd in part*, 780 F.3d 647 (5th Cir. 2015). In 1978, Congress amended OCSLA to state the following:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, ***and all installations and other devices permanently or temporarily attached to the seabed,*** which may be erected thereon for the purpose of exploring for, developing, *or producing* resources therefrom, *or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources,* to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State ...

43 U.S.C. § 1333(a)(1) (emphasis added).  Congress inserted the clause "and all installations and other devices permanently or temporarily attached to the seabed" in place of the phrase "fixed structures."[1]

To determine the "situs" of the controversy as required under *PLT*, the Court applies a focus-of-the-contract test.  *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009).  "[A] contractual indemnity claim (or any other contractual dispute) arises on an OSCLA situs if a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A)." *Id.* at 784.  Here, it is undisputed that a majority, if not all, of the work called for under the Contract was to be performed on the ENSCO 8506 while it was temporarily attached to the seabed. Moreover, as articulated in the amended OCSLA statute, a device temporarily attached to the seabed is an OCSLA situs.  *See* 43 U.S.C. § 1333(a)(1).  Therefore, the contractual indemnity dispute in the present case arose on a OCSLA situs. *See Kaluza* 2013 WL 6490341, at *17 (holding that "the *Deepwater Horizon* [a semi-submersible drilling rig], when connected and attached to the OCS through its drilling mechanisms and is performing exploration and production of mineral resources, is 'erected' on the OCS for the purposes of Section 1333(a)(1)."); *see also* H.R. REP. No. 95-590, at 128 (1977) (emphasis added) (stating that OCSLA is to be applicable to "activities on *drilling ships, semi-submersible drilling rigs, and*

---

[1] According to the House Conference Report regarding the 1978 Amendments to OCSLA, the intent of the amendments "is technical and perfecting and is meant to restate and clarify and not change existing law."  H.R. REP. 95-1474, at 80 (1978).  However, the report's subsequent statement that "Federal law is to be applicable to all activities on all devices in contact with the seabed" demonstrates a clear intent to expand the statute's reach to types of structures on the OCS.  *Kaluza*, 2013 WL 6490341, at *14.

*other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances*, on the OCS for exploration, development, and production.").

    b. **Federal Maritime Law Applies of Its Own Force**

Given that the controversy in the present case arose on a situs governed by OCSLA, the Court must determine whether federal maritime law applies of its own force. In other words, the Court must determine whether the Daywork Drilling Contract is maritime in nature.

In *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313 (5th Cir. 1990), the Fifth Circuit articulated a legal framework for determining whether a contract is maritime. Under *Davis*, there are two parts to the inquiry: An examination of the "historical treatment in the jurisprudence" and a six factor "fact specific inquiry." In some cases, the historical treatment of a particular contract and scenario is "clear enough to make the second part of the test unimportant." *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 500 (5th Cir. 2002). The six *Davis* factors used to determine whether a contract is a maritime contract are as follows:

    1) What does the specific work order in effect at the time of the injury provide?
    2) What work did the crew assigned under the work order actually do?
    3) Was the crew assigned to work aboard a vessel in navigable waters?
    4) To what extent did the work being done relate to the mission of that vessel?
    5) What was the principle work of the injured worker?
    6) What work was the injured worker actually doing at the time of the injury?

*Davis*, 919 F.2d at 316; *see also Energy XXI, GoM, LLC v. New Tech Engineering, LP*, 787 F. Supp. 2d 590, 601 (S.D. Tex. 2011) ("A specialty services contract related to oil and gas exploration takes on a salty flavor when the performance of the contract is more than incidentally related to the execution of the vessel's mission.").

STC argues that casing services have a long history of being considered maritime in nature, and that nothing in the six *Davis* factors indicates that the activities being performed call

for a deviation from this precedent.  Regarding the first factor, STC notes that there was no formal "Work Order."  However, STC points out that the crew had entered the "plug and abandonment process" of casing services, which was separate from the subsequent non-maritime wireline operations.  For the second factor, STC again notes that the workers were engaged in "plug and abandon" procedures, which can be construed as maritime operations.  Concerning the third factor, STC states that the ENSCO 8506 is a "dynamically-positioned semi-submersible drilling rig" that was in navigation in the Gulf of Mexico and was therefore a vessel.  Addressing the fourth factor, STC states that the mission of the vessel was to engage in plug and abandon operations, and that all work related to the incident was connected to said mission.  For the fifth, STC states that the principle work of the injured worker was plug and abandonment operations.  Lastly, STC avers that the injured worker was handling chain tongs in an attempt to tighten STC's tool in order to run it into the hole to remove casing.

　　　　ENSCO counters STC's claim that the *Davis* factors lead to the conclusion that the contract at issue was a maritime contract by insisting that the work the crew was assigned to do was solely for wireline services.  While there was no "specific work order in effect" at the time of the incident, ENSCO argues that the language of the contract itself characterizes the work to be performed as drilling services, and the contract contains no provision regarding casing services.  While ENSCO admits that contracts for casing services have been found to constitute maritime contracts, it nevertheless argues that the authority cited by STC concerning contracts for casing services are inapplicable to this case because the contract at issue is for drilling services instead of casing services.  ENSCO argues that the plugging and abandoning activities described by STC are simply components of the wireline operations which can be construed as non-maritime in nature.  *See Domingue v. Ocean Drilling and Exploration Co.*, 923

8

F.2d 393, 395-97 (5th Cir. 1991) (noting that "wireline services are peculiar to the oil and gas industry and, *viewed apart from the circumstances under which they are performed*, are distinctly non-maritime in nature" but also noting the *Davis* analysis is a "highly fact-specific inquiry" and citing cases where wireline operations have instead been characterized as maritime in nature) (emphasis added).  ENSCO asserts that the proper interpretation is to recognize that drilling services can be accomplished just as easily on land as at sea, and thus, there is nothing distinctly maritime about a drilling services contract which suggests it should be governed under maritime law.

Pursuant to *Davis*, the Court first examines the historical treatment of similar contracts and, if that inquiry does not conclusively settle the question, the Court then considers the six fact-specific factors identified by the *Davis* court.  Because Fifth Circuit precedent has not unambiguously established that plugging and abandoning activities related to wireline operations in a contract for drilling services are always either maritime or non-maritime, the fact-intensive inquiry as to the nature of the work performed is appropriate.  *See Baloney*, 570 Fed. Appx. at 426 (finding that although "the majority of contractual oil-and-gas-related services performed on the jack-up rig, especially those services rendered under contracts for vessel repair, have been deemed maritime because they relate to the vessel's overall mission," Fifth Circuit "precedent has not established a clear boundary between sea and land" such that the fact-specific inquiry is still necessary).

Fifth Circuit precedent does not conclusively determine, as a matter of law, whether the services performed in this case were maritime or non-maritime.  Both parties can point to lines of authority supporting their preferred characterization; for example, ENSCO may rely on cases for its proposition that contracts for wireline drilling services connected with oil and gas exploration

9

are inherently non-maritime,[2] and STC may conversely rely on other lines of cases where the services performed were found to be integral to the mission of a vessel or otherwise maritime in nature.[3]  However, STC has the stronger argument that this contract is maritime because the crew was assigned to work aboard a vessel in navigable waters and the work being performed was more than incidentally related to the execution of the vessel's mission.  The fact that the ENSCO 8506 is an OCSLA situs does not mean that it loses its status as a vessel.

The provision of casing services on special purpose offshore drilling vessels have been deemed maritime.  *See Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 (5th Cir. 1992); *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332 & n. 1 (5th Cir.1981) (holding that federal maritime law, rather than Louisiana law, controls construction of indemnity clause in purchase order for casing service), *citing Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge,* 424 F.2d 684, 691 (5th Cir.) (contract for drilling work is maritime contract),

---

[2] *See, e.g., Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393, 398 (5th Cir. 1991) (finding contract solely for performance of wireline services on a jackup drilling vessel was not governed by maritime law); *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 953 (5th Cir. 1988) (holding that state law applied when the principal obligation of a contract was to perform wireline services, which is not a maritime activity); *Nippon Oil Exploration U.S.A. Ltd. v. Murphy Exploration & Prod. Co. - USA*, No. CIV.A. 10-2850, 2011 WL 2456358, at *3 (E.D. La. June 15, 2011) (applying Louisiana law to well plugging and abandoning operations); *A.M.C. Liftboats, Inc. v. Apache Corp*., 622 F. Supp. 2d 355 (E.D. La. 2008) *adhered to on reconsideration*, No. CIV.A. 06-10543, 2008 WL 1988807 (E.D. La. May 5, 2008) (applying state law where the principal obligation of the contract was to perform wireline services on an oil platform).

[3] *See, e.g., Hoda v. Rowan Cos.,* 419 F.3d 379, 383 (5th Cir. 2005) (applying maritime law, despite the fact that "[b]eyond doubt, the torquing services [] provided pertain solely to oil and gas development and, in and of themselves, have nothing to do with traditional maritime activity or commerce," when the work performed on blow-out preventers was an integral part of drilling, the primary purpose of the specialty purpose vessel); *Demette v. Falcon Drilling Co.,* 280 F.3d 492, 501 (5th Cir. 2002) *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (finding maritime law applied to a contract when the plaintiff was performing casing services on a jacked-up rig over navigable waters, the primary purpose of which was drilling); *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1123-24 (5th Cir. 1992) (finding maritime law applied when the plaintiff "was injured while working as part of a crew contracted to travel upon and enable a special-purpose vessel to perform the [maritime] function for which that vessel was designed"); *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538 (5th Cir. 1986) (finding contract addressing operation of a submersible vessel in drilling operations was maritime in nature); *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332 (5th Cir. 1981) (holding that a contract under which a company furnished a casing crew to an offshore drilling rig was a maritime contract).

*cert. denied,* 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970). The Fifth Circuit has held that casing services require the use of the rig's derrick and draw works to accomplish its tasks. *Campbell*, 979 F.2d at 11123. The provision of casing services, which logically includes the removal of casing services, contributes to the mission of a special purpose vessel and is "inextricably intertwined with maritime activities since it required the use of a vessel and its crew." *Id.* In sum, Clay was injured aboard the vessel while working as part of the vessel crew to enable the special-purpose vessel to perform the function for which that vessel was designed. Therefore, the underlying contract between Anadarko and ENSCO, a contract for services to enable the ENSCO 8506 to complete its drilling mission, is maritime in nature.

## V. CONCLUSION

The Court need not reach the third factor of the *PTL* test—whether state law to be adopted under OCSLA is contrary to existing federal law—because Louisiana law is not applicable to the present matter. Despite the fact that the ENSCO 8506 is a OCSLA situs, federal maritime law applies of its own force. Accordingly, this Court is compelled to recognize the obligation assumed by ENSCO to indemnify the contractors of Anadarko under the contract between those parties.

**IT IS ORDERED** that STC's Motion for Summary Judgment (R. Doc. 43) seeking contractual indemnity and defense against ENSCO is **GRANTED**.

**IT IS FURTHER ORDERED** that ENSCO's Motion for Summary Judgment (R. Doc. 45) denying cross-claims by STC is **DENIED.**

New Orleans, Louisiana, this 17th day of November, 2015.

_____
UNITED STATES DISTRICT JUDGE

12