# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBBY CLAY | CIVIL ACTION |
| VERSUS | NO. 14-2508 |
| ENSCO OFFSHORE COMPANY | SECTION "L" (3) |

## ORDER & REASONS

Before the Court are three summary judgment motions: (1) Plaintiff's Motion for Partial Summary Judgment against ENSCO (R. Doc. 51); (2) ENSCO's Cross-Motion for Partial Summary Judgment dismissing the Plaintiff's claims for unseaworthiness and Jones Act negligence (R. Doc. 60) and (3) Plaintiff's Motion for Partial Summary Judgment against STC on liability. (R. Doc. 52).  Having considered the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

## I.     BACKGROUND

### a.  Procedural Background

This admiralty case arises out an injury allegedly sustained by the Plaintiff Bobby Clay ("Plaintiff") while working aboard the vessel ENSCO 8506, a semisubmersible drilling vessel. Plaintiff filed suit under the Jones Act and General Maritime Law of the United States against ENSCO Offshore Company ("ENSCO") as his employer and as the owner and/or operator of the ENSCO 8506.  (R. Doc. 1).  Plaintiff alleges that while working aboard the vessel he suffered "severe and excruciating injuries which were proximately caused by the negligence of defendant."  *Id.*  Specifically, Plaintiff alleges that he was injured when a drill tool broke and struck him in the neck.  As a result of this incident, Plaintiff claims he has suffered and will continue to suffer loss of income, medical expenses, and severely painful and disabling injuries.

Plaintiff seeks general and special damages and maintenance and cure from ENSCO.  *Id.*

Plaintiff and ENSCO have now stipulated that Plaintiff enjoys seaman status under the Jones

Act.  (R. Doc. 34).  Plaintiff ultimately amended his complaint to name Schlumberger

Technology Corporation ("STC") as a co-defendant, re-alleging all claims against ENSCO and

claiming negligence against STC under Louisiana law.  (R. Doc. 42).  The relationship between

the Defendants in this case is complex and is described in greater detail below.

   **b.  Uncontested Facts**

   In September of 2001, Anadarko Petroleum Corporation ("Anadarko") and STC entered

into a Master Service Agreement, pursuant to which STC would provide petroleum exploration-

related services to Anadarko.  Thereafter, in January of 2012, Anadarko and ENSCO entered into

a Daywork Drilling Contract, pursuant to which ENSCO would provide drilling services to

Anadarko.  On the date of the alleged injury,  ENSCO's semi-submersible drilling vessel

"ENSCO 8506" was providing such drilling services to Anadarko and STC personnel were

providing tool and casing removal services to Anardarko.  At this time, the ENSCO drilling crew

was engaged in "plug and abandonment" well work in the navigable waters of the Gulf of

Mexico.  Specifically, casing which lined the well underground was being extracted.  A tool

called a "shortcut spear" (a/k/a "plug and abandon spear") was used to remove the casing; the

spear goes "down hole," expands when turned, and grabs the inside of the casing so it can be

extracted.  *See* (R. Doc. 51-2), the Rule 30(b)(6) deposition of STC, at 16-18.  The shortcut spear

was manufactured by STC and assembled by STC prior to being brought aboard the ENSCO

8506.  Personnel from STC's Drilling Tools and Remedial Division (DT&R), Ryan Motty

("Motty") and Karl Drobbish, were assigned to the ENSCO 8506 as field supervisors to oversee

the assembly and use of the STC plug and abandonment tools.  *Id.* at 12, 28-29.

On or about August 7, 2013, Plaintiff was an ENSCO employee assigned to drill deck floor hand duties aboard the ENSCO 8506.   Prior to beginning downhole operations with the shortcut spear, Motty began a function test of the tool.   The function test was unsuccessful and Motty halted sending the spear "down hole" while he left the drill floor to consult a service manual.  (R. Doc. 59-4 at 1).   Motty returned to the drill floor and tried to "troubleshoot" the shortcut spear using the vessel's hydraulic tongs.  (R. Docs. 51-11, 59-4, 61-4). This effort was unsuccessful.  *Id.*  Motty next tried to "troubleshoot" the shortcut spear using the vessel's elevator.  *Id.*  This effort was also unsuccessful.  *Id.*  Four ENSCO floor hands, including the Plaintiff, were then directed to use chain tongs to rotate the spear.  (R. Doc. 51-2 at 64-65). While attempting to manipulate the shortcut spear using the chain tongs, the steel drag block components of the tool, which were approximately 25 inches long and weighed approximately 26 pounds each, were ejected from a position three or more feet above the Plaintiff.  (R. Docs. 51-11, 59-4, 61-4).  Plaintiff was struck on the back of his neck by the ejected steel drag block components of the tool and allegedly injured.  *Id.*

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir.2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

**III.    CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT BETWEEN PLANTIFF AND ENSCO**

Plaintiff seeks an entry of partial summary judgment against ENSCO as to his unseaworthiness claim and his Jones Act negligence claim. Specifically, Plaintiff argues that (1) the shortcut spear was an "appurtenance" of the ENSCO 8506; (2) the defective shortcut spear rendered the ENSCO 8506 unseaworthy; and (3) ENSCO is liable to the Plaintiff pursuant to the Jones Act. ENSCO opposes the motion and seeks an entry of partial summary judgment dismissing the Plaintiff's claims, arguing that (1) the unseaworthiness claim should be dismissed as a matter of law because the shortcut spear is not an appurtenance of the ENSCO 8506 and the crew of the ENSCO 8506 did not render the vessel unseaworthy and (2) the negligence claim

should be also be dismissed because there is no evidence that ENSCO breached its duty of care. The Court will discuss each of these claims in turn.

### a. Unseaworthiness Claim

"The owner of the vessel has a duty to provide a vessel that is reasonably fit for its intended use. This duty to provide a seaworthy vessel requires that the vessel, its gear, appurtenances, and operation must be reasonably safe." *Drachenberg v. Canal Barge Co., Inc.,* 571 F.2d 912, 918 (5th Cir.1978). This duty extends to "the hull of the vessel, the vessel's cargo handling machinery, lines and tackle and all kinds of equipment either belonging to the vessel owner or brought aboard by others." *Bush v. Diamond Offshore Co.,* 46 F.Supp.2d 515, 520 (E.D.La.1999). "A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage might be improper." *Nichols v. Weeks Marine, Inc.,* 513 F.Supp.2d 627, 635 (E.D.La.2007) *(quoting Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499–500, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971)). The duty of seaworthiness does not, however, extend to providing "a perfect or accident-free vessel." *Phillips v. Western Co.,* 953 F.2d 923, 928 (5th Cir.1992).

In opposition to the Plaintiff's motion, ENSCO argues that Plaintiff's unseaworthiness claim against ENSCO should be dismissed for two reasons: (1) the shortcut spear involved in Plaintiff's alleged accident was not an appurtenance of the vessel; and (2) the crew of the vessel did not render the vessel unseaworthy.  The Court will discuss each argument in turn.

### i. *Whether the shortcut spear was appurtenant to the vessel*

As noted above, the duty of seaworthiness extends not just to the vessel but to all equipment that is appurtenant to the vessel. *Drachenberg,* 571 F.2d at 918. An appurtenance is "any identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation or mission." *Coakley v. SeaRiver Maritime, Inc.,* 319 F.Supp.2d 712, 714 n. 1 (E.D.La.2004) (*quoting Scott v. Trump Indiana,* 337 F.3d 939, 944 (7th Cir.2003)). An item can be appurtenant to the vessel even where the item is brought aboard by a contractor and the vessel did not sanction its use or know of its existence. *See Deffes v. Federal Barge Lines, Inc.,* 361 F.2d 422, 426 (5th Cir.1966).

In *Drachenberg,* the Fifth Circuit examined the relevant factors one should look to when determining whether a piece of equipment is appurtenant to the vessel.  571 F.2d at 919-920. The court noted that "certain types of temporary attachment to the vessel by equipment not part of the ship's usual gear or stored on board or controlled by the ship's crew can satisfy the requirements for [equipment to be appurtenant to the vessel]." *Drachenberg,* 571 F.2d at 920. The court also observed that it is "highly significant" when an accident occurs on-board the vessel as opposed to dockside. *Id.* at 921. Where an injury occurs on-board the vessel, a court should look only to whether there is a "minimal attachment" between the equipment and the ship. *Id.*

The *Drachenberg* decision was guided by the Supreme Court's decision in *Victory Carriers, Inc. v. Law*, 404 U.S. 202 (1972), which in turn relied on two earlier Supreme Court Decisions—*Alaska S.S. Co. v. Petterson* and *Rogers v. United States Lines. Id.* at 919-920.  In *Petterson*, a longshoreman on board a vessel was utilizing a breaking block brought aboard by the stevedoring company to unload the ship.  While being used in connection with the ship's gear in a proper manner by the longshoreman, the block broke causing his injuries.  Even though the

blocks neither belonged to the shipowner nor were part of the ship's equipment, the Supreme Court affirmed the Court of Appeals' decision that a seaworthiness claim was congnizable. *Alaska Steamship Co. v. Petterson*, 347 U.S. 396, 396 (1954).  Similarly, in *Rogers*, the longshoreman was injured on board by the stevedore's land fall runner in the operation of one of the winches by an employee of the stevedoring company while unloading ore from the cargo hold of the vessel.  Thus, in reversing the Court of Appeals and recognizing a claim for unseaworthiness, the Supreme Court in effect held that the stevedore's equipment, adopted by the vessel and incorporated with the ship's cargo handling equipment, became an appurtenance of the vessel.  *Rogers v. United States Lines*, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120 (1954), *rev'g*. 205 F.2d 57 (C.A. 3 1954).

The aforementioned cases are in line with the more general proposition that equipment aboard a vessel used to perpetuate the mission and purpose of the vessel are appurtenances of the vessel.  *See Matter of Antill Pipeline Const. Co., Inc.*, No. CIV. A. 97-0578, 1998 WL 321512, at *3 (E.D. La. June 17, 1998) ("Appurtenances are those items belonging to the owner of the vessel which were on board for the voyage and were part of what the owner risked on the vessel for purposes of the adventure.  Furthermore… an appurtenance is not necessarily attached to or permanently assigned to a vessel.") (internal citations omitted); *see also Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1357 (5th Cir. 1983) ("An appurtenance to a vessel must be in use in conjunction with the primary functioning of the vessel *at the time of the accident*.").  In the present matter, the shortcut spear was being used to perpetuate the mission and purpose of the vessel.  The ENSCO 8506 was a semisubmersible drilling vessel.  On the date of the injury, the ENSCO crew was engaged in plugging a well that had been drilled by the ENSCO 8506.  In order to accomplish this task pursuant to its drilling contract with Andarko, ENSCO had to

employ a Bottom Hole Assembly (BHA).  Notwithstanding the fact that it was provided by STC to Andarko, the shortcut spear was part of a larger assembly for the BHA to be introduced into the drill hole for purposes of removing the casing.  Thus, the shortcut spear was being used in conjunction with the primary functioning of the vessel.  *See Parks v. Pine Bluff Sand & Gravel Co.*, 712 So. 2d 905, 911 (La. App. 3 Cir. 2/18/98) (holding that the "words 'used in conjunction with the primary function of the vessel' should be broadly construed.")

Additionally, the other *Drachenberg* factors weigh in favor of finding that the shortcut spear was an appurtenance of the ENSCO 8506.  The accident occurred aboard the ship in navigable waters in the Gulf of Mexico and involved a piece of equipment, the shortcut spear, that was central to the vessel's mission of plugging the well it drilled.  It occurred while the shortcut spear was part of the BHA and was going to attached to the vessel.  Such minimal attachment is sufficient to make an item appurtenant to the vessel. *See Drachenberg,* 571 F.2d at 920 (noting that the Supreme Court has in effect found that a landfall runner, brought aboard by a stevedore company and attached to the ship only by way of one of the ship's winches, was an appurtenance of the vessel) (*citing Rogers v. United States Lines,* 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120 (1954) (per curiam)). Because the equipment was appurtenant to the vessel, ENSCO was responsible for the unseaworthy condition of such equipment.

ENSCO makes several points in support of the argument that the shortcut spear was not appurtenant to the vessel.  However, each of these points relies on case law that is distinguishable from the present matter.  In fact, none of the cases cited by ENSCO involve vessel unseaworthiness; the cases cited by ENSCO are either § 905b harbor worker claims, or they are shipowners' limitation of liability claims.  In *Willis v. McDonough Marine Serv*., this court held that "the absence of any indication of privity of ownership between the vessel and the

stair set (or even any connection between Defendants and the stair set) prevents a finding of appurtenance status here." No. CIV.A. 14-811, 2015 WL 3824366, at *9 (E.D. La. June 18, 2015). However, the Court goes on to say that "[t]he issue of whether an item is an appurtenance of a vessel is largely immaterial here, where the Court has already concluded that the Plaintiff is a worker covered by the LHWCA and barred from *Sieracki* seaman status." *Id*. Since the 1972 amendments to the LHWCA, there is no *Sieracki* seaman status. Additionally, the court's primary concern with respect to this issue is the lack of any connection between the equipment at issue and the vessel. In *Willis*, a § 905b case, the plaintiff was not employed by the defendants and neither the defendant vessel-owner nor the defendant to whom the vessel was bareboat chartered was responsible for the placement of the equipment at issue on the vessel. *Id.* at 1. This is distinguishable from the present case where the Plaintiff was assigned to drill deck floor hand duties aboard the ENSCO 8506 and directed to use chain tongs to rotate the shortcut spear. Although ENSCO did not own the shortcut spear, it was provided to Anadarko for use by ENSCO to perform drilling services to Andarko and Plaintiff was injured in the course of providing such services.

ENSCO argues that the shortcut spear is not an appurtenance because it was not used in conjunction with the primary functioning of the vessel at the time of the accident. *See Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1357 (5th Cir. 1983). In *Fox*, however, the Plaintiff was not on a vessel when the injury occurred and the equipment at issue was in dry dock for repair and nonoperational. *Id.* The *Fox* court held that, as a matter of law, the plaintiff was not a Jones Act seaman and could not assert an unseaworthiness claim. In the present matter, the Plaintiff was a Jones Act seaman and was aboard the ENSCO 8506 in navigable waters and was engaged in troubleshooting the shortcut spear for immediate use when the injury occurred.

9

Finally, according to the ENSCO, the shortcut spear cannot be an appurtenance because it was not essential to vessel operations. *See also Wilcox v. Max Welders, LLC,* No. CIV.A. 12-2389, 2014 WL 585603, at *4 (E.D. La. Feb. 13, 2014). In *Wilcox*, the plaintiff suffered injuries when undetected gases exploded while he was welding in a cassion on a fixed platform. *Id.* at *1. Plaintiff argued that "the cutting tool which was supposed to be used in lieu of the explosives was actually an appurtenance of the vessel, and that vessel negligence is present because '[h]ad the ship's appurtenance not failed, the explosion would not have occurred.'" *Id.* at *4. In rejecting this argument, the court stated that because the vessel-owner only would have used (or not used) the cutting tool in decommissioning the well and not in operating the vessel, the vessel-owner was only responsible for the tool in its capacity as the contractor decommissioning the well. *Id.* However, despite this dicta, it must be noted that the plaintiff in *Wilcox* was a welder on a fixed offshore platform and the district court granted summary judgment against his § 905b claim because the alleged negligent acts were not undertaken by the defendant in its capacity as vessel owner. *Id.* at *5. In the present matter, the alleged negligence occurred while STC was assisting ENSCO, as the Plaintiff's employer, in ENSCO's performance of plugging and abandoning services, which were subject to its drilling contract with Anadarko. Thus, the shortcut spear was essential to the vessel's current plug and abandonment operations, which were part of the vessel's mission and purpose.

ENSCO also argues that the shortcut spear is not an appurtenance because it was manufactured and assembled by STC as a third-party contractor of Anadarko. *See Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 218 (5th Cir. 1984); *Landry v. G.C. Constructors*, 514 F. App'x 432, 438 (5th Cir.) *cert. denied*, 134 S. Ct. 212, 187 L. Ed. 2d 142 (2013) (holding that temporary structures on vessels created and used by independent contractors to perform their

work are not appurtenances.)  However, neither *Futo* nor *Landry* are analogous to the present

matter.  Both cases were § 905b cases and the appurtenance analysis in both cases related to a

shipowner's duty to intervene.  In *Futo*, a harborworker died as the result of a fall aboard a

vessel, while he was working on a temporary scaffold erected by a fellow employee.  742 F.2d at

210-211.  The victim's widow claimed that Lykes was negligent in failing to correct a hazardous

condition i.e., the absence of the railing on the scaffold, but Lykes contended that any duty it had

to the decedent applied "only when the dangerous condition involves the ship's gear or

equipment."  *Id.* at 211.  In resolving this issue, the Fifth Circuit wrote:

> "The scaffold was not an appurtenance of the ship but was rather a temporary
> structure created and used entirely by the independent contractor to perform its
> work.  It belonged to and was controlled by the contractor."

*Id.* at 218.  Notably, at the time of the injury, the vessel was docked, it had no power other than

electrical power provided from ashore, no facilities were maintained for eating or sleeping

aboard the ship, and the usual crew from the vessel was not present for the repair.  *Id.* at 210.

This is distinguishable from the present matter.  The shortcut spear was not a "temporary

structure created and used entirely by" STC.  Instead it was a tool that was incorporated into a

BHA, which was operated by ENSCO crewmen aboard an ENSCO vessel, and which

contributed directly to the vessel's current plug and abandonment mission.

Similarly, in *Landry*, the Plaintiff, who worked as a crane operator assigned to a

barge, injured himself while aboard a crane that was brought aboard a vessel to be used in bridge

construction work.  G.C., his long shore employer, also owned the barge, and the plaintiff sued,

alleging that the crane temporarily aboard the barge was an appurtenance under G.C.'s control as

vessel owner.  514 F.App'x at 438-439.  The Fifth Circuit held that the crane was used by G.C.

as a contractor, and not as a vessel owner, and as such it had no duties under § 905b with respect

11

to equipment it brought aboard as a contractor and which was under its control. The present matter is distinguishable as the shortcut spear was to be used by ENSCO as a vessel owner. Additionally, the injury in the present matter occurred within the course and scope of the Plaintiff's employment under ENSCO while completing duties related to the vessel's primary mission. This is unlike *Futo* and *Landry* where the plaintiff was employed by an independent contractor and the injury occurred in the course and scope of the independent contractor's repair work, unrelated to the vessel's primary mission.

ii. ***Whether the crew rendered the vessel unseaworthy***

The Plaintiff contends that ENSCO engaged in an unsafe method of work in directing him to operate chain tongs below the shortcut spear, which rendered the vessel unseaworthy. (R. Doc. 51-1 at 12). Given the testimony from Motty that the troubleshooting methods were in accordance with his training and the fact that the cause of the spear malfunction appears to be improper assembly by STC, the Plaintiff's claim that ENSCO engaged in an unsafe method of work is likely meritless. However, the Court need not make a determination with regard to this claim given that the Court finds the shortcut spear to be an appurtenance of the ENSCO 8506.

Unseaworthiness is not a fault-based standard; a plaintiff must show, however, that the unseaworthy condition "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Phillips v. Western Co. of North America,* 953 F.2d 923, 928 (5th Cir.1992). There is no dispute that the shortcut spear played a substantial part in bringing about the injury. Thus, given that the shortcut spear was appurtenant to the vessel, the Plaintiff's injury was the direct result and/or probable consequences of the vessel's unseaworthiness.

**b.  Liability under the Jones Act**

12

Independent from a claim under general maritime law for injuries caused by the unseaworthiness of a vessel, a seaman may have a claim under the Jones Act.  Under the Jones Act, 46 U.S.C. § 688, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury, in whole or in part.  *Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331, 335 (5th Cir.1997) (en banc).  An employer is liable under the Jones Act if the negligence of its employees played "any part, even the slightest" in causing the injury or death for which damages are sought.  *Id.* (citing *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)).  Even so, the Fifth Circuit clarified that the employer's standard of care is not greater than that of ordinary negligence under the circumstances.  *Id.* at 339.  "[A] Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of an injury does not establish liability."  *Marvin v. Central Gulf Lines, Inc.,* 554 F.2d 1295, 1299 (5th Cir.), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978).  To recover damages for his employer's negligence, a seaman must prove that the employer breached its duty of care; ordinary prudence under the circumstances is the standard for the duty of care owed by an employer to a seaman.  *Gautreaux,* 107 F.3d at 335–36.

The Plaintiff argues that ENSCO is liable under the Jones Act for negligently causing his injuries by failing to exercise stop work authority when the shortcut spear failed its function test and by failing to provide a safe place to work.  After the spear failed the initial function test, Motty halted sending the spear "down hole" while he left the drill floor to consult a service manual.  (R. Doc. 59-4 at 1).  According to ENSCO's "Employee Injury and Illness Report", Motty "told [an Anadarko employee] and [an ENSCO employee] to stop the job due to uncertainty of shortcut spear being assembled correctly."  (R. Doc. 51-4).  Thereafter, Motty returned to the drill floor and tried to "troubleshoot" the shortcut spear using the vessel's

hydraulic tongs.  (R. Docs. 51-11, 59-4, 61-4). This effort was unsuccessful.  *Id.*  Motty next tried to "troubleshoot" the shortcut spear using the vessel's elevator.  *Id.*  This effort was also unsuccessful.  *Id.*  Four ENSCO floor hands, including the Plaintiff, were then directed to use chain tongs to rotate the spear.

Plaintiff contends that by ordering him to use chain tongs to rotate the spear after the spear failed the initial function test, STC and ENSCO caused the drag blocks' safety mechanism to fail, causing Plaintiff's injury.  (R. Doc. 51-1).  ENSCO, however, argues that the fact that the spear did not function properly during a function test did not put ENSCO on notice that the spear was a hazard that would necessitate the use of stop work authority.  (R. Doc. 59 at 10-11). Indeed, the Plaintiff admitted that there was no obvious hazard:

> Q:     But as far as you were concerned, what you all were doing at the time, there was no indication that anything was about to happen adverse, correct?
> A:     That's correct.
> Q:     You have used your stop work authority during your period of time working with ENSCO?
> A:     Yes, I have.

(R. Doc. 59-3 at 2).  Additionally, Motty testified that the troubleshooting methods were in accordance with his training, the cause of the malfunction was improper assembly by STC and not the troubleshooting procedures, and ENSCO personnel did not contribute to the accident.  (R. Doc. 59-2 at 15).

There remain genuine issues of material fact regarding liability under the Jones Act.  It is unclear at this point whose negligence caused the accident.  In order to grant summary judgment, a court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta,* 530 F.3d at 399.  This high burden is not satisfied here as a reasonable jury may differ as to whether STC was the sole cause of the accident and/or whether the alleged

negligence of ENSCO personnel was the legal cause, in whole or part, of Plaintiff's injury. Accordingly, the Court declines to grant summary judgment in favor of either the Plaintiff or ENSCO with regard to the Plaintiff's Jones Act negligence claim.

## IV. MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST STC

Plaintiff seeks an entry of partial summary judgment against STC as to his general maritime law negligence claim. Specifically, Plaintiff asks the Court to enter partial summary judgment against STC with regard to liability because STC played a substantial part in bringing about Plaintiff's injury, and that his injury was the direct result of STC's self-admitted acts or omissions when assembling and/or inspecting the shortcut spear at its Broussard, Louisiana, facility.

STC opposes Plaintiff's motion, arguing that summary judgment against STC is inappropriate at this stage because discovery is incomplete. STC contends that it should be afforded additional time to take depositions in order to obtain testimony regarding the acts of the ENSCO crew in damaging the original spear that was brought to the vessel, necessitating the use of the back-up spear that was ultimately involved in the plaintiff's accident.

Summary judgment can only be granted if there is not genuine issue as to any material fact. *See* Fed. R. Civ. Pro. 56(c). Therefore, summary judgment is not appropriate at this time as the facts of the case have yet to be fully discovered.

## V. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment against ENSCO (R. Doc. 51) is **GRANTED** with respect to the unseaworthiness claim and **DENIED** with respect to the Jones Act negligence claim. The shortcut spear is an appurtenance of the vessel and, because it was not reasonably fit or safe for

its intended use, the ENSCO 8506 was unseaworthy.  However, at this time, the Court declines to hold that the actions of ENSCO with respect to the accident constitute negligence under the Jones Act.

      **IT IS FURTHER ORDERED** that ENSCO's Cross-Motion for Partial Summary Judgment (R. Doc. 60) is **DENIED**.

      **IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment against STC (R. Doc. 52) is **DENIED AS PREMATURE** but Plaintiff retains the right to re-urge this motion following the completion of discovery.


New Orleans, Louisiana, this 18th day of November, 2015.

UNITED STATES DISTRICT JUDGE