UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBBY CLAY | CIVIL ACTION |
| VERSUS | NO. 14-2508 |
| ENSCO OFFSHORE COMPANY | SECTION "L" (3) |

## ORDER AND REASONS

### I. BACKGROUND

#### A. Procedural History

This admiralty case arises out an injury allegedly sustained by the Plaintiff Bobby Clay ("Plaintiff") while working aboard the vessel ENSCO 8506, a semisubmersible drilling vessel. Plaintiff filed suit under the Jones Act and General Maritime Law of the United States against ENSCO Offshore Company ("ENSCO") as his employer and as the owner and/or operator of the ENSCO 8506. (R. Doc. 1). Plaintiff alleges that while working aboard the vessel he suffered "severe and excruciating injuries which were proximately caused by the negligence of defendant." *Id.* Specifically, Plaintiff alleges that he was injured when a drill tool broke and struck him in the neck. As a result of this incident, Plaintiff claims he has suffered and will continue to suffer loss of income, medical expenses, and severely painful and disabling injuries. Plaintiff seeks general and special damages and maintenance and cure from ENSCO. *Id.* Plaintiff ultimately amended his complaint to name Schlumberger Technology Corporation ("STC") as a co-defendant, re-alleging all claims against ENSCO and claiming negligence against STC under Louisiana law. (R. Doc. 42).

**B. Uncontested Facts**

In September of 2001, Anadarko Petroleum Corporation ("Anadarko") and STC entered into a Master Service Agreement, pursuant to which STC would provide petroleum exploration-related services to Anadarko. (R. Docs. 101-3, 107-4). Thereafter, in January of 2012, Anadarko and ENSCO entered into a Daywork Drilling Contract, pursuant to which ENSCO would provide drilling services to Anadarko. *Id.* On the date of the alleged injury, ENSCO's semi-submersible drilling vessel "ENSCO 8506" was providing such drilling services to Anadarko and STC personnel were providing tool and casing removal services to Anardarko. *Id.* At this time, one of the tools being used to accomplish casing removal was a Schlumberger shortcut spear (a/k/a "plug and abandon spear"). *Id.* The shortcut spear was manufactured by STC and assembled by STC prior to being brought aboard the ENSCO 8506. Ryan Motty (Mr. Motty) from STC's Drilling Tools and Remedial Division (DT&R) was assigned to the ENSCO 8506 as a field supervisor to oversee the assembly and use of the STC plug and abandonment tools.

On or about August 7, 2013, Plaintiff was an ENSCO employee assigned to drill deck floor hand duties aboard the ENSCO 8506. *Id.* Prior to beginning downhole operations with the shortcut spear, Mr. Motty began a function test of the tool. *Id.* The function test was unsuccessful and Mr. Motty halted sending the spear "down hole" while he left the drill floor to consult a service manual. (R. Doc 101-3). Mr. Motty returned to the drill floor and tried to "troubleshoot" the shortcut spear using the vessel's hydraulic tongs. (R. Docs.101-3, 107-4). This effort was unsuccessful. *Id.* Mr. Motty next tried to "troubleshoot" the shortcut spear using the vessel's elevator. This effort was also unsuccessful. *Id.* Four ENSCO floor hands, including the Plaintiff, were then directed to use chain tongs to rotate the spear. The shortcut spear included as component parts four spring-loaded steel "drag blocks" which were approximately 25 inches

long and weighed approximately 26 pounds each. (R. Docs.101-3, 107-4). While attempting to manipulate the shortcut spear using the chain tongs, the steel drag blocks were suddenly popped off of the spear from a position three or more feet above the Plaintiff. Plaintiff was struck on the back of his neck by the ejected steel drag block components of the tool and allegedly injured.

### C.  Relevant Facts from the STC Rule 30(b)(6) Deposition

On August 21, 2015, Plaintiff took the Fed. R. Civ. P. 30(b)(6) deposition of STC through its designated representative, Mr. Motty, STC's field service supervisor aboard ENSCO 8506 at the time of Plaintiff's injury. *See* (R. Doc. 101-2). His duties were to instruct the ENSCO driller and rig floor hands how to assemble STC tools and operate them "downhole." *Id.* at p. 23. ENSCO was responsible for moving these tools (collectively called a "bottom hole assembly" or "BHA") up and down in the hole. *Id.* at pp. 23-24.

During the relevant time period, the ENSCO drilling crew (of which Plaintiff was a member) was engaged in "plug and abandonment" well work. Specifically, casing which lined the well underground was being extracted using a shortcut spear. *Id.* at p. 16. The shortcut spear goes "down hole," expands when turned, and grabs the inside of the casing so it can be extracted. *Id.* at pp. 17-18. One component of the shortcut spear are spring-loaded "drag blocks," which move outward to create friction on the inside diameters of the well's casing to allow the shortcut spear to rotated. *Id.* at pp. 18-20. Ordinarily, drag blocks have top and bottom retention mechanisms which keep them from popping off the spear. *Id.* at pp. 20-21. However, in this instance, one of the drag block pieces "popped out the assembly and hit [the Plaintiff]." *Id.* at p. 18.

Prior to Plaintiff's injury, the shortcut spear owned and provided by STC "had already been made part of the bottom hole assembly" and the bottom hole assembly was "physically

attached to the drill pipe." *Id.* at pp. 24-25. Further, at the time of the initial function test, the shortcut spear was already completely incorporated into the drill string i.e., the top and bottom of the shortcut spear were attached to other parts of the BHA. *Id.* at p. 47. The function test was unsuccessful; Mr. Motty consulted the manual and began troubleshooting. *Id.* at pp. 62-63. Mr. Motty tried using hydraulic tongs to rotate the spear, but the jaws of the tongs didn't fit. *Id.* at p. 63. Then, he tried rotating the spear using the derrick's elevators. *Id.* at p. 63. When this was unsuccessful, Mr. Motty instructed the floorhands, including the Plaintiff, to use chain tongs to try to rotate the spear manually. *Id.* During their attempt at manual rotation, drag block components of the shortcut spear popped out and fell on the men below. *Id.* at p. 69. Mr. Motty didn't see Plaintiff get hit, but he saw him fall to the drill deck floor. *Id.* at pp. 4, 122.

Before the accident, Mr. Motty knew that the body of the shortcut spear was rotating in an inappropriate fashion because it was not correctly locked into position. *Id.* at p. 62. After the accident, it was determined that the problem was the way the shortcut spear was attached to its sub-assemblies. *Id.* at pp. 60-61. When asked what caused the drag blocks to detach, Mr. Motty responded: "Well, the J-cage sub is supposed to be torqued to 10,000 pounds. In my opinion, if it was torqued, it wouldn't have backed off." *Id.* at p. 71. Thus, according to Mr. Motty, this was not an instance where the component parts of the spear itself were defective; rather, there was an issue with the assembly of its components. *Id.* at p. 76. The J-cage, which required a torque of 10,000 pounds when assembled, was not made up completely, which allowed the J-cage to unthread when rotating, allowing the four spring-loaded drag blocks to pop out of assembly. *Id.* at p. 89. Notably, the shortcut spear was assembled at STC's shop in Broussard, Louisiana. *Id.* at p. 90. An alternative explanation for the cause of the incident is the improper use of a compression tool to "close in" tabs located on the drag blocks. *Id.* at pp. 93-94. If the drag blocks

were not properly compressed, the J-cage sub would "butt up" against the face of the tabs. The spear can still be torqued, but it would not be in the correct position. *Id.* at p. 94.

## II.     PRESENT MOTION

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment against Defendant STC (R. Doc. 101). Plaintiff seeks an entry of partial summary judgment against STC as to his general maritime law negligence claim. Specifically, Plaintiff asks the Court to enter partial summary judgment against STC with regard to liability because STC played a substantial part in bringing about Plaintiff's injury, and that his injury was the direct result of STC's self-admitted acts or omissions when assembling and/or inspecting the shortcut spear at its Broussard, Louisiana, facility.

## III.    APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir.2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,

477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little,* 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta,* 530 F.3d at 399.

### B. General Maritime Law Negligence

The principle of general maritime law negligence applies to this case. The elements of a general maritime law negligence cause of action are the same as those for common-law negligence claims: 1) defendant owed a duty; 2) defendant breached that duty; 3) plaintiff suffered damages; 4) defendant's wrongful conduct caused the damages. *In re Great Lakes Dredge & Dock Co., LLC,* 624 F.3d 201, 211 (5th Cir. 2010); *Authement v. Ingram Barge Co.*, 977 F.Supp.2d 606, 612 (E.D. La. 10/4/13).

A duty of care exists when injury is foreseeable. *Daigle v. Point Landing, Inc.*, 616 F.2d 825 (5th Cir. 1980). Negligence is a failure to observe that degree of care, precaution, and vigilance which the circumstances demand, the failure to observe the ordinary degree of care which people of ordinary prudence would use under the same circumstances. *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108 (1963).

IV.      PLAINTIFF'S ARGUMENT

Plaintiff argues that the deposition of STC's Ryan Motty, an eyewitness to the incident, established the following material facts by a preponderance of the evidence. The shortcut spear was improperly assembled and/or inspected by STC. Moreover, it was STC's job "to make sure [the bottom hole assembly] was inspected, and then properly attached [to the drill pipe] before it went downhole." *Id.* at p. 24. The only two conditions that could have caused the incident—not enough torque applied or the drag block tabs were not properly compressed—could have been prevented by proper assembly at STC's shop. STC has exclusive care, custody and control of the shortcut spear during its assembly and inspection at STC's Broussard, Louisiana facility. STC employee Mr. Motty knew something was wrong with the shortcut spear during "function testing" aboard the ENSCO 8506. Plaintiff's injury was either a direct result of, or a reasonably probable consequence, of the improperly assembled and/or inspected shortcut spear. Further, there is no evidence to suggest that Plaintiff plated any role in causing or contributing to his own injury. Plaintiff argues further that the established facts fully support an entry of partial summary judgment in Plaintiff's favor on the general maritime law negligence liability issue.

V.      DEFENDANT STC'S RESPONSE

STC makes two arguments in response to Plaintiff's motion. First, STC argues that shortcut spear never would have been employed if actions by the ENSCO crew had not allegedly damaged the original shortcut spear that had been used without incident for two days prior to Plaintiff's accident. In the "chain of events" of causation, if the damage to the first shortcut spear had not occurred, STC would have continued to use the original functioning spear and would have used the second shortcut spear, which caused the injury.

Second, STC argues that the Plaintiff may be the sole cause of his injuries because he slipped in the shower on August 14, 2013, a week after the events on the ENSCO rig. One of Plaintiff's treating physicians, Dr. Rand Voorhies, opined that this slip and fall could be the sole potential cause of the disc injury suffered by the Plaintiff. STC argues that Plaintiff's negligence in the shower creates a dispute of fact as to whether the slip and fall is a superseding cause of Plaintiff's injury precluding summary judgment. However, in the Summary and Conclusions section of his November 20, 2015 letter which diagnoses the C5-C6 cervical spine disc levels as the "relevant pain generator" in Plaintiff's neck, Dr. Voorhies wrote, "it is clear that Mr. Clay was injured as the result of an offshore accident that occurred on 08/07/2013."

## VI.    ANALYSIS

STC's first argument – that it is not liable because the shortcut spear never would have been employed if actions by the ENSCO crew had not allegedly damaged the original shortcut spear—is without merit. It is expected that oilfield tools will break or wear out. This is why spare parts are kept on drilling vessels. STC has a duty to properly assemble its own tools regardless of whether those tools are used as back-ups or as the primary tool.

STC's second argument, however, is persuasive. While certain facts are not in dispute, there remains an issue regarding causation and damages. It is not disputed that STC owed a duty to the Plaintiff, STC breached that duty, and STC's breach caused a 26 pound drag block to fall onto Mr. Clay and strike him in the neck. What remains in dispute, however, is whether Mr. Clay suffered actual injury when he was struck on the back of the neck and, if so, whether the injuries from which he currently suffers were caused by the drag block striking him on the neck, by the superseding fall in the shower or by some pre-existing condition.

In sum, it clear that STC owed a duty to properly assemble and/or inspect its shortcut spears in order to protect others against unreasonable risks such as a 26 pound drag block falling on a person's neck. It is equally clear that by failing to apply the proper 10,000 pounds of torque (or by failing to properly compress the drag block tabs), STC breached that duty. Additionally, STC's breach (i.e., its improper assembly and/or inspection) caused the drag blocks to spring lose and fall upon Mr. Clay. As such, STC is liable for negligence and this Court finds that STC's negligence caused drag block to fall on Mr. Clay. That said, it remains up to the jury to determine whether the drag block caused the injury of which Mr. Clay complains and, if so, what are the damages associated with the injury caused by STC.

## VII.   CONCLUSION

Considering the foregoing, **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **GRANTED** with respect to STC's liability and **DENIED** with respect to causation of the injury.

New Orleans, Louisiana, this 22nd day of April, 2016.

_____
UNITED STATES DISTRICT JUDGE